**UNITED STATES of America,**
**Appellee,**

v.

**George CRISCI, Defendant–Appellant.**

**No. 00–1741.**

United States Court of Appeals,
Second Circuit.

Argued June 28, 2001.

Decided Nov. 29, 2001.

Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP (Erica T. Dubno, on the brief) New York, NY, for Defendant–Appellant.

Sean Eskovitz, Assistant United States Attorney, (Mary Jo White, United States Attorney, David Raymond Lewis, Assistant United States Attorney, on the brief) New York, NY, for Appellee.

Before MINER, LEVAL, and POOLER, Circuit Judges.

PER CURIAM.

George Crisci appeals from the November 2, 2000, judgment of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *Judge*) after a trial jury convicted him of seventeen counts of bank fraud in violation of 18 U.S.C. § 1344, and one count of making false statements to federal law enforcement agents, in violation of 18 U.S.C. § 1001. Although Crisci raised several arguments in his appeal, we write primarily to join our sister circuits in holding that an indictment is not duplicitous or otherwise defective when it charges in a single count bank fraud under both subsections (1) and (2) of Section 1344. Proof of the violation of either subsection, each of which concerns the different means of committing bank fraud, is sufficient to support a conviction.

## BACKGROUND

From November 1998 until April 1999, Crisci worked as the chief engineer at the Wartburg Adult Care Community ("Wartburg"), a residential health care facility for senior citizens located in Mount Vernon, New York. Wartburg officials fired Crisci on April 27, 1999. Between March 11 and April 22, 1999, Crisci carried out a scheme in which he requisitioned and then cashed twenty fraudulently endorsed checks drawn on Wartburg bank accounts and totaling approximately $95,000. Crisci

generally created false invoices on the letterhead of contractors doing business for Wartburg and then requisitioned checks from Wartburg's financial officers to satisfy these fictitious accounts payable. Wartburg's accounting department directly gave Crisci checks payable to the various third-party contractors, and the checks were drawn on one of three different Wartburg checking accounts at the Bank of New York and Chase Manhattan Bank. Crisci fraudulently endorsed the checks by forging the signatures of the named payees. Defendant then presented the checks for payment at David's Check Cashing ("David's"), a private company that visited the Wartburg campus weekly in order to cash employees' paychecks. Crisci told David's employees of his position at Wartburg, that he was in charge of security, and that he was going to pay the contractors named on the checks with cash rather than the checks. David's employees gave Crisci the cash and deposited the checks in a separate Wartburg bank account at Chase Manhattan Bank known as the payroll account. The checks cleared against the accounts on which they were drawn, causing funds to move from those three accounts into the payroll account.

After firing Crisci, Wartburg officials discovered and investigated Crisci's activities. On August 19, 1999, agents of the Federal Bureau of Investigation ("FBI") interviewed Crisci about his conduct, and he denied the details of the scheme. Officials arrested Crisci on a criminal complaint in November 1999. A federal grand jury indicted Crisci on March 14, 2000, and charged him with seventeen counts of bank fraud, one for each of seventeen fraudulently endorsed checks totaling $86,311, and one count of making false statements to FBI investigators. A jury trial took place from June 20 to 28, 2000, and the jury convicted defendant on all eighteen counts. Judge Parker denied defendant's

post-verdict motions and sentenced Crisci on November 2, 2000, to 33 months imprisonment, three years supervised release, $86,311 restitution, and $1,800 special assessment. Defendant appeals his conviction and sentence.

## DISCUSSION

### I. Duplicity

Crisci argues that all eighteen of the counts with which the government charged him were improper because they were duplicitous, or charged more than one offense in a single count. With respect to the seventeen bank fraud counts, defendant contends that they defectively charged violations of both Section 1344(1) and Section 1344(2). Subsection (1) makes it a crime to "defraud a financial institution," while subsection (2) makes it a crime to obtain, among other things, money from a financial institution "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. With respect to the false statement count, defendant argues that the indictment's language improperly allowed the jury to convict him on any one of the seven statements that the government alleged were false. We reject both duplicity claims on their merits.

The vice of a duplicitous charge is that it risks to impair "a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980). This is so because a general verdict of guilty on a duplicitous count will not reveal whether the jury reached a unanimous verdict on each offense and "whether the jury found defendant guilty of only one crime and not the other, or guilty of both." *Id.* However, an indictment is not defective if it alleges "in

a single count ... the commission of a crime by several means." *Id.* We thus distinguish between improperly charging separate offenses in one count and properly charging separate means of committing a single crime in a single count.

■ Crisci contends that the bank fraud counts are duplicitous because they charge violations of both Section 1344(1), which prohibits a scheme to defraud a financial institution, and Section 1344(2), which prohibits a scheme to obtain a financial institution's money "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. According to defendant, it is impossible to know from the general verdict whether the jury convicted him under subsection (1), subsection (2), or both. Crisci's duplicity argument depends on interpreting subsections (1) and (2) to describe distinct crimes rather than two ways of committing the single crime of bank fraud.

We reject defendant's statutory interpretation. Instead, we here join our sister circuits that have considered Section 1344 and held that a single count of an indictment may charge bank fraud under both subsections (1) and (2) and that proof of the violation of either subsection is sufficient to support a conviction. *See United States v. LeDonne,* 21 F.3d 1418, 1427 (7th Cir.1994); *United States v. Barakett,* 994 F.2d 1107, 1110 n. 10 (5th Cir.1993); *United States v. Stone,* 954 F.2d 1187, 1192 (6th Cir.1992); *United States v. Fontana,* 948 F.2d 796, 801–02 (1st Cir.1991); *United States v. Celesia,* 945 F.2d 756, 758–59 (4th Cir.1991); *United States v. Schwartz,* 899 F.2d 243, 246 (3d Cir.1990). Because the two subsections of Section 1344 are written in the disjunctive, these circuits have interpreted Section 1344 as defining different ways in which a defendant may commit the offense of bank fraud. We agree with this characterization of the statute. *Cf. United States v. Ragosta,* 970 F.2d 1085, 1088–89 (2d Cir.1992) (affirming conviction under subsection (1) where indictment did not specify under which subsection of Section 1344 defendant was charged).

■ Defendant next argues that the district court improperly charged the jury that it could convict him under Section 1001 if any one of the seven charged statements was false and that we cannot know from the general verdict which statement the jury found Crisci to have falsely made. However, the district court also instructed the jury that in order to convict Crisci under Section 1001, it had to unanimously agree on "any statement that the defendant made in violation of the false statement statute." The indictment language clearly describes the seven alleged false statements as material and made during the course of the FBI investigation. There is no indication in the record that the jury did not follow the court's instruction and unanimously agree on the statement or statements for which it convicted Crisci on Count 18.

## II. Other issues on appeal

### A. Bank fraud

Defendant also contends that his bank fraud convictions are improper because he did not possess the requisite intent to defraud a financial institution. According to Crisci, he did not perpetrate a fraud on any bank because he cashed checks on Wartburg's premises using Wartburg's money in a purely insular transaction without any contact with banks.

■ In order to show bank fraud, the government must prove that defendant "(1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to

actual or potential loss." *United States v. Barrett,* 178 F.3d 643, 647–48 (2d Cir. 1999). "The bank need not be the immediate victim of the fraudulent scheme" and need not have suffered actual loss "as long as a defendant acted with the requisite intent." *Id.* at 648. The government must prove that a bank was "an actual or intended victim" of defendant's scheme, and defendant's knowing negotiation of a bank check bearing a forged endorsement satisfies this requirement. *See United States v. Laljie,* 184 F.3d 180, 189 (2d Cir.1999); *see also Barrett,* 178 F.3d at 648. We look to "the entire circumstances of defendant's conduct" as an indication of his intent. *See Barrett,* 178 F.3d at 648.

■ Based on the entire circumstances of this case, a rational jury could find that Crisci intended to harm a bank when he cashed seventeen fraudulent checks with forged endorsements, even though defendant physically presented the forged checks to David's and not a bank. The jury could infer that inherent in Crisci's transactions with David's was the risk that the forged checks would be presented to a bank for payment. *United States v. Jacobs,* 117 F.3d 82, 93–94 (2d Cir.1997). In fact, the checks caused bank payments to be made, first from Wartburg's payroll account at Chase and then from the drawee accounts to reimburse the payroll account. The government also presented evidence that banks drew money from three Wartburg accounts separate from the payroll account into which David's deposited the checks. Like the defendant in *Barrett,* Crisci is not relieved of criminal liability for bank fraud because his primary victim was the employer from which he embezzled funds by submitting fraudulent check requests. *See Barrett,* 178 F.3d at 647–48. The government presented sufficient evidence of bank fraud and criminal intent because Crisci engaged in deceptive conduct toward the banks when he forged third-party endorsements and Crisci's scheme caused funds under the control of the banks to move from one of three accounts into the payroll account.

## B. Sentencing issues

■ Crisci contends that the district court erred when it enhanced his sentence by two levels each for (1) obstruction of justice; (2) multiple victims and more than minimal planning; and (3) abuse of a position of trust, for a total increase of six levels. We review *de novo* the sentencing court's interpretation of the Sentencing Guidelines and reverse only for clear error in its related findings of fact. *See United States v. Arshad,* 239 F.3d 276, 279 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2259, 150 L.Ed.2d 244 (2001).

■ Crisci argues first that the two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 must fail because the district court did not make a specific finding regarding his intent to obstruct justice and merely relied on the jury's conviction on the false statements count. Crisci also argues that the enhancement is unwarranted because his false statements were not significant and did not deter the FBI's investigation of his bank fraud. Neither argument has merit. The application notes to the guideline state that the adjustment applies to any conduct regarding the official investigation of the instant offense "where there is a separate count of conviction for such conduct." U.S.S.G. § 3C1.1, comment. (n.4); *see also id.,* comment. (nn.5, 8). In this case, Crisci's separate count of conviction for making false statements to the FBI agent investigating the instant offense compelled the district court to apply Section 3C1.1. *See, e.g., United States v. Armstrong,* 842 F.Supp. 92, 94 (S.D.N.Y.1994).

Defendant contends second that the two-level enhancement pursuant to U.S.S.G. § 2F1.1(b)(2) for a scheme to defraud more than one victim is improper because the only victim for sentencing purposes here was Wartburg and not the two banks. We agree that application of Section 2F1.1(b)(2) for multiple victims may have been improper because the Sentencing Guidelines limits the definition of victims here to entities from which funds come directly, and the funds Crisci embezzled may not have come directly from the banks. U.S.S.G. § 2F1.1(b)(2), comment. (n. 4). The district court at sentencing did not clarify the entities it considered to be victims for purposes of applying this enhancement. However, the district court based its decision at sentencing not only on multiple victims but also on the fact that Crisci's scheme involved more than minimal planning. Crisci's scheme involved a great deal of planning because he requisitioned, obtained, forged, and cashed seventeen separate checks. *See Barrett,* 178 F.3d at 649. Section 2F1.1(b)(2) calls for the enhancement on either ground. We thus affirm the district court's ruling on the grounds of more than minimal planning and do not reach the issue of multiple victims.

Crisci argues third that the two-level adjustment for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3 was incorrect because he did not occupy a position of trust with the "victim" banks or David's and his job at Wartburg did not give him authority to cash checks payable to contractors. We rejected nearly identical arguments in *Barrett* and held that the sentencing increase applied where defendant's position with his employer facilitated his ability to request fraudulent checks and the bank was a secondary victim of his fraud. *See id.* at 645–47. Based on the facts at trial, the district court did not clearly err when it held that defendant "had discretion to prepare and submit documentation that caused payments by his employer of substantial amounts of money that Mr. Crisci then had apparent authority in his position as Chief Engineer to pay and disburse."

## CONCLUSION

For the forgoing reasons, we affirm the judgment of conviction and sentence.