UNITED STATES of America, Plaintiff—Appellee,

v.

Rita Marie LAVELLE, Defendant— Appellant.

No. 05–50034.

D.C. No. CR–04–00374–SJO–01.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 2005.

Decided Aug. 25, 2005.

Dorothy Kim, Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Elizabeth A. Newman, Federal Public Defender's Office, Los Angeles, CA, for Defendant–Appellant.

Before FARRIS, D.W. NELSON, and TALLMAN, Circuit Judges.

### MEMORANDUM *

Defendant Rita Marie Lavelle appeals her sentence for wire fraud and making false statements, arguing that the district court erred by applying an incorrect version of the Sentencing Guidelines as well as applying the Guidelines in a mandatory fashion. We affirm in part and remand.

Lavelle owned and operated NuTech Enterprises, an environmental consulting business in California. NuTech's clients included DeNova Environmental, Inc., a hazardous waste storage facility, and Lemco Corporation, whose property was undergoing an environmental cleanup. In 2000, DeNova became financially indebted to NuTech. To satisfy the debt, DeNova's owner, Robert Cole, schemed with Lavelle to fraudulently obtain a loan from Capital Partners USA, Inc. in exchange for the right to collect DeNova's future accounts receivables. Lavelle created a false Purchase Order, which made it appear as if Lemco owed DeNova $52,130 for the removal of over 400 barrels of hazardous waste. She submitted the Purchase Order to Capital Partners along with a Continuing Guaranty and Waiver, Credit Application and Bank Information Release, and Security Agreement. She also provided Capital Partners with the requisite information (e.g., bank account and social security numbers) to enable them to access the bank account that Lemco's owner, Joseph Bertelli, an 80 year old cancer patient, had purportedly offered as security for the loan. Later, Cole sent an invoice to Capital Partners illustrating that Lemco was indebted to DeNova. Subsequently, NuTech received by wire $36,441 from Capital Partners.

When Capital Partners attempted to collect on the assigned Purchase Order, Lavelle repeatedly assured the company that Lemco would satisfy the debt. However, Capital Partners remained unsatisfied, and in November 2000, it sent Lemco an invoice. In turn, Lemco's owner, Bertelli, approached Lavelle concerned that he may have been defrauded. He was assured by

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Lavelle that she would resolve the matter. Months later, Lavelle admitted to an FBI agent that she signed Bertelli's name on the Continuing Guaranty and Waiver and Purchase Order. Once she realized that she was a target of a federal investigation, however, Lavelle changed her story during two separate interviews with the FBI.

A jury convicted Lavelle of wire fraud and making false statements to the FBI. The jury also found that the loss from the scheme was more than $30,000, that there were multiple victims, and that Lavelle knew or should have known that at least one victim of her scheme was vulnerable because of his age (i.e., more than 80 years old) and physical condition (i.e., stricken with cancer).

At sentencing, the trial judge calculated Lavelle's base offense level as 6. The court agreed with and adopted the jury's findings and enhanced her sentence by 8 levels—6 levels because the loss was more than $30,000 but less than $70,000 and 2 levels because Bertelli was a vulnerable victim. Consequently, the court computed her total adjusted offense level as 14 with a criminal history category I. The court sentenced Lavelle to 15 months, the low end of the guideline range (15–21 months).

Lavelle claims she was sentenced under the wrong version of the Sentencing Guidelines. She also argues that if the district court would have applied the 2000 version of the Guidelines, then the multiple and vulnerable victim sentencing enhancements would have been inapplicable to her sentence. As a general rule, a sentencing court must apply the version of the Sentencing Guidelines effective at the time of sentencing. *United States v. Warren,* 980 F.2d 1300, 1304 (9th Cir.1992). If application of that version would violate the Ex Post Facto Clause of the United States Constitution, then the court applies the version of the Guidelines in effect when the defendant committed her offenses. *Id.*

Here, the district court was concerned about potential constitutional violations associated with applying the Guidelines in effect at the time of sentencing, and therefore, it applied the November 2001 Guidelines, which were in effect at the end of a series of related offenses committed by Lavelle. The district court refused to apply the 2000 Guidelines, which were in effect when Lavelle committed wire fraud, because it concluded that her sentencing range would be the same under either version of the Guidelines.

Under either version of the Guidelines the district court correctly calculated Lavelle's sentencing range. As discussed above, under the 2001 Guidelines, which grouped Lavelle's convictions under U.S.S.G. § 2B1.1, Lavelle's total offense level was 14 with a criminal history category of I.

Under the 2000 Guidelines, which grouped Lavelle's convictions under U.S.S.G. § 2F1.1, Lavelle's base offense level would be 6, plus 4 levels to reflect the amount of loss. *See* U.S.S.G. § 2F1.1 (2000). Because the district court found that Capital Partners and Bertelli were victims, and that Bertelli was a vulnerable victim, the court would have then enhanced Lavelle's sentence 4 levels: 2 levels because multiple victims were involved and 2 levels to reflect the vulnerability of a victim. Thus, even if the district court had applied the 2000 Guidelines, Lavelle's total offense level would have remained 14.

Lavelle argues that under the 2000 Guidelines neither the multiple victim nor the vulnerable victim enhancements would have applied. According to her, only Capital Partners, not Bertelli, was a victim of her scheme. The 2000 Guidelines provide for an enhancement if "the offense involved . . . a scheme to defraud more than one victim." U.S.S.G. § 2F1.1(b)(2)(B). "Scheme to defraud more than one victim

... refers to a design or plan to obtain something of value from more than one person. In this context, victim refers to the person or entity from which the funds are to come directly." *United States v. Nazifpour*, 944 F.2d 472, 473–74 (9th Cir. 1991) (quoting U.S.S.G. § 2F1.1) (internal quotations omitted).

Lavelle received "value" from Bertelli's purported promise to pay DeNova—that is, Bertelli's purported promise guaranteed the loan from which Lavelle obtained funds. Lavelle also received "value" from disclosing Bertelli's personal information to Capital Partners because that disclosure gave credence to her statement that Bertelli had secured the loan.

Lavelle contends that she failed to obtain "value" from Bertelli because he was not the person from whom funds were to come "directly." In support of her contention, she relies on the Second Circuit's decision in *United States v. Crisci*, 273 F.3d 235 (2d Cir.2001). In *Crisci*, the defendant cashed twenty fraudulently endorsed checks drawn on his employer's accounts at two banks. The court stated, in *dicta*, that an enhancement for multiple victims "may have been improper" because "the funds Crisci embezzled may not have come directly from the banks." *Id.* at 241. But Lavelle's scheme is dissimilar to the forged check scheme discussed in *Crisci*. Unlike the scheme in *Crisci*, where funds were to come from the employer's accounts only, in this case, the scheme involved funds coming directly from two different sources (an entity and a person): $36,441 was to move from Capital Partners to Lavelle and $52,140 was supposed to move from Bertelli to Capital Partners.

After Lavelle was sentenced, the Supreme Court held that the Guidelines are advisory, not mandatory. *United States v.*

*Booker*, —— U.S. ——, 125 S.Ct. 738, 764–67, 160 L.Ed.2d 621 (2005). Because nothing in the record indicates whether the district court would have imposed the same sentence had it known the Guidelines were advisory, we remand Lavelle's sentence in accordance with *United States v. Ameline*, 409 F.3d 1073, 1084 (9th Cir. 2005) (en banc). *See United States v. Moreno–Hernandez*, —— F.3d ——, ——, 2005 WL 1560269, at *8 (9th Cir. July 5, 2005) (stating that "defendants are entitled to limited remands in *all* pending direct criminal appeals involving unpreserved *Booker* error, whether constitutional or nonconstitutional") (emphasis in original).

**AFFIRMED IN PART; SENTENCE REMANDED.**