[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15511
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 26, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00036-CR-WLS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

HENRY MATHIS,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

**(July 26, 2006)**

Before DUBINA, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Henry Mathis, an elected commissioner of the City of Albany, Georgia, appeals his 36-month sentence for three convictions of extortion by a public official, in violation of 18 U.S.C. § 1951; and one count of misleading statements, in violation of 18 U.S.C. § 1512(b)(3). The government cross-appeals arguing that Mathis's sentence is unreasonable in violation of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), because it is far below the recommended sentencing guideline range.

On appeal, Mathis first argues that the evidence failed to establish the required nexus to interstate commerce. Second, Mathis argues that the evidence did not establish extortion under the threat of economic loss. Third, Mathis argues that the government could not prosecute him for making misleading statements after law enforcement had completed their investigation by invoking a statement from him in which he denied information that authorities already had. Fourth, Mathis challenges the district court's application of the guideline governing extortion by force or threat of injury or serious damage under U.S.S.G. § 2B3.2, rather than the guidelines for blackmail and similar forms of extortion under U.S.S.G. § 2B3.3. Fifth, Mathis argues that the district court erred by applying the obstruction of justice enhancement under U.S.S.G. § 3C1.1. Finally, Mathis argues

2

that the district court erred by enhancing the offense level for abuse of position of trust under U.S.S.G. § 3B1.3.

The government cross appeals arguing that the district court erred in sentencing Mathis to only 36 months in prison where the sentencing guideline range was 57 to 71 months, and the court's only stated reason for imposing a sentence below the recommended guideline range would have justified a sentence of 51 to 63 months. We address these seven issues in turn.

## I.

Generally, we review *de novo* whether the record contains sufficient evidence to support a jury's guilty verdict, and view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor. *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). Where, as here, a defendant does not move the district court for a judgment of acquittal at the close of the evidence, within seven days after a guilty verdict, or after the jury is discharged, however, we may reverse the conviction only to prevent a manifest miscarriage of justice. *See* Fed. R. Crim. P. 29(a), and (c); *United States v. Hamblin*, 911 F.2d 551, 556-57 (11th Cir. 1990). This standard requires us to find that "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* at 557 n.2 (citation omitted).

The Hobbs Act applies to those who "in any way or degree . . . affects commerce or the movement of any article or commodity in commerce, by . . . extortion or attempts . . . to do [so] . . . . " 18 U.S.C. § 1951(a). In order to sustain jurisdiction under the Hobbs Act, the government need only show that the offense had at least a minimal impact, so long as it is actual, on interstate commerce. *United States v. Guerra*, 164 F.3d 1358, 1359-60 (11th Cir. 1999); *United States v. Diaz,* 248 F.3d 1065, 1088 (11th Cir. 2001). We have "continued to stress a fact-specific inquiry into the . . . likely extent of any impact on interstate commerce." *United States v. Verbitskaya*, 406 F.3d 1324, 1332 n.10 (11th Cir. 2005). Furthermore, "it is of no moment to the analysis whether the effect is characterized as 'direct' or 'indirect'-if the defendant's conduct had a *minimal* effect on commerce, nothing more is required." *United States v. Gray*, 260 F.3d 1267, 1276 (11th Cir. 2001) (citation omitted). "Where a defendant is charged with attempt . . . to violate the Hobbs Act, the interstate nexus may be demonstrated by evidence of *potential impact* on interstate commerce *or* by evidence of actual, *de minimis* impact." *United States v. Le*, 256 F.3d 1229, 1232 (11th Cir. 2001) (internal quotations and citations omitted).

Considering each of the three episodes of extortion separately, we find that the record here demonstrates that the government's proof satisfied the interstate

4

nexus jurisdictional requirement under the "depletion of assets" theory. Under that theory, "commerce is affected when an enterprise, which either is actively engaged in interstate commerce or customarily purchases items in interstate commerce, has its assets depleted through extortion, thereby curtailing the victim's potential as a purchaser of such goods." *United States v. Jackson*, 748 F.2d 1535, 1537 (11th Cir. 1984).

With regard to McDonald, a victim of Mathis's extortion, the testimony at trial showed that McDonald was treasurer of a motorcycle club ("Club"); he spent between $100 and $200 per week buying beer at a local package store; the beer was sold at the Club's lounge ("lounge"); and he was reimbursed for those expenses by the Club's secretary. McDonald testified that had he not given his money to Mathis, that money would have been used to buy more beer for the lounge. The record shows that the beer that McDonald regularly purchased had been transported through interstate commerce. Therefore, Mathis's extortion of McDonald depleted McDonald's assets, burdened him with an additional cost of supplying the lounge with beer, and had at least a minimal impact on interstate commerce. *See Gray*, 260 F.3d 1276.

The record also shows that Mathis's extortion of Wilson had at least a minimal impact on interstate commerce. Testimony at trial showed that Southwest

5

Carting ("Southwest"), Wilson's garbage collection enterprise, spent approximately $2,500 per month on fuel that was transported from out of state and sold in Albany. In addition, Wilson testified that had she not given Mathis the money she gave him, that money would have gone into Southwest. Thus, like *Jackson*, the record here shows that Mathis's extortion depleted Southwest's assets and burdened Wilson with an additional cost of doing business.

Last, because Hadley, another victim of Mathis's extortion, was the operations manager of Southwest and Mathis approached Hadley during Southwest's subcontract to provide garbage collection services to the City, a reasonable jury could have concluded that Mathis targeted Hadley in his capacity and relationship with Southwest. Furthermore, a reasonable jury could have concluded that Mathis's attempted extortionist conduct could have had at least a minimal potential effect on interstate commerce because any money Hadley would have given to Mathis would have come from an enterprise engaged in interstate commerce. *See Le*, 256 F.3d at 1232.

In sum, we conclude that because a reasonable jury could have found that the evidence established the jurisdictional requirement of at least a minimal effect on interstate commerce for each of the challenged counts of extortion, Mathis has

6

failed to show that the evidence was so tenuous that his conviction demonstrated a manifest miscarriage of justice.

## II.

As noted above, the Hobbs Act prohibits interference with interstate commerce by means of extortion. 18 U.S.C. § 1951. The term "extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . ." 18 U.S.C. § 1951(b)(2). The anticipation of economic loss constitutes "fear" within the meaning of the Hobbs Act. *United States v. Duhon* 565 F.2d 345, 351 (5th Cir. 1978).[1] Thus, an offense occurs when a defendant intends to exploit a victim's reasonable fear of economic loss. *United States v. Flynt*, 15 F.3d 1002, 1007 (11th Cir. 1994).

"The fear experienced by the victim does not have to be the consequence of a direct threat." *United States v. Haimowitz*, 725 F.2d 1561, 1572 (11th Cir. 1984). Rather, "an actionable claim under the Hobbs Act can be made out even if the threats used to extort are merely subtle and indirect, so long as the government can show circumstances surrounding the alleged extortionate conduct that rendered the

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

victim's fear of threatened loss reasonable." *United States v. Blanton*, 793 F.2d 1553, 1558 (11th Cir. 1986) (internal quotations and citation omitted). "In proving the crime of extortion, where intent often must be inferred from ambiguous statements and situations, the jury's verdict must be accorded substantial weight." *Duhon,* 565 F.2d at 352.

In the case of a charge of attempted extortion, the "[p]otential impact is measured at the time of the attempt, *i.e.*, when the extortion demand is made, based on the assumed success of the intended scheme." *United States v. Farrell*, 877 F.2d 870, 875 (11th Cir. 1989) (citation omitted).

Having reviewed the record in accordance with the pertinent *de novo* standard of review, we conclude that the evidence was sufficient to support Mathis's convictions. With respect to McDonald, the record shows that in response to Mathis's conduct, McDonald gave him money to which he had no lawful claim out of McDonald's reasonable fear of economic loss. *See Blanton*, 793 F.2d at 1558. Mathis was an elected official involved in the liquor licensing process who personally told members of the Club that he could do something about the initial refusal to grant a license, and he instructed the Club to re-apply for the license, which resulted in its successful issuance. After the license was granted Mathis personally visited McDonald and asked him for a fee in return for his help,

but to which he had no lawful claim, and when McDonald refused, Mathis immediately warned him that the lounge was in violation of an existing city ordinance. At trial, McDonald testified that, "if we didn't pay [Mathis] the rest of that money, that he might do something to cause us to lose our [liquor] license." These facts show that a reasonable jury could find that McDonald had a reasonable fear of economic loss, and that Mathis engaged in fear inducing conduct to extort money from McDonald to which he had no lawful claim.

The record also shows that Wilson reasonably feared economic loss. Wilson believed that Mathis was "a political figure with power." When Wilson learned that Mathis had asked Hadley for money, Wilson gave Mathis money because she believed that if she refused he would do something to adversely affect Southwest's contracts. The fact that Mathis did not make a direct threat against Wilson is not determinative here because Mathis targeted her business. *See Haimowitz*, 725 F.2d at 1572. Thus, because Mathis was a Commissioner who was responsible, at least in part, for her company's success, it was reasonable for Wilson to believe that she would have to comply with his demands for money if she did not want Mathis to take some adverse action against Southwest.

Last, even though Hadley admitted that Mathis never threatened him, a reasonable jury could conclude that based on the assumed success of the intended

scheme, Mathis attempted to extort money from Hadley in exchange for his assistance in securing the garbage collection subcontracts for Southwest. The attempted extortion was complete when Mathis, after inquiring about the business, asked Hadley for a cash contribution, which he declined to do because the request for cash raised a red flag. In sum, Mathis has failed to show that his convictions were a manifest miscarriage of justice.

III.

Generally, we review a district court's statutory interpretation and application *de novo*, but where, as here, an issue is raised for the first time on appeal, we will reverse for plain error only. *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). To satisfy the plain-error standard, we must find that: (1) the district court committed error; (2) the error was plain or obvious; and (3) the error affected substantial rights in that the error was prejudicial and not harmless. If these criteria are met, we may correct the plain error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736, 113 S. Ct. at 1779.

Federal law provides that

(b)     Whoever knowingly uses intimidation, threatens, or . . . engages in misleading conduct toward another person, with intent to . . .

10

(3)     hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ;

shall be fined . . . or imprisoned not more than ten years, or both.

18 U.S.C. § 1512(b)(3).  Importantly, the jurisdictional basis under § 1512(b)(3) is not limited to "official proceedings."  *United States v. Veal*, 153 F.3d 1233, 1251 (11th Cir. 1998).  In *Veal*, we held that the misleading conduct consisted of the defendant's false statements about their respective participation in the actual offense.  *Id.* at 1246.  Furthermore, there is no requirement that the defendant intend to mislead federal authorities; rather, all that is required is the possibility or likelihood that the defendant's false and misleading information would be transferred to federal authorities irrespective of the governmental authority represented by the initial investigators.  *Id.* at 1251-52.

We conclude from the record that Mathis fails to show that reversible error occurred when he was prosecuted and convicted of violating § 1512(b)(3).  Testimonial and other evidence at trial showed that Mathis did take money from McDonald, and that he later told state law enforcement agents that he did not take any money for any purpose from McDonald.  Thus, the record demonstrates that

11

Mathis intended to mislead authorities, and therefore, no error occurred as a result of his conviction.

IV.

Because Mathis objected to the application of the guideline governing extortion by force or threat of injury or serious damage under U.S.S.G. § 2B3.2 in the district court, we review his claim *de novo*. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005).

"[T]o correctly determine the applicable offense guideline, a sentencing court must identify the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction." *United States v. Saavedra*, 148 F.3d 1311, 1314 (11th Cir. 1998) (citation omitted). The guidelines direct that the applicable guidelines for convictions under 18 U.S.C. § 1951 are, among others not relevant here, sections 2B3.2 (extortion by force or threat of injury or serious damage), and 2B3.3 (blackmail and similar forms of extortion). U.S.S.G. § 1B1.2, and App. A.

> In the case of a particular statute that proscribes a variety of conduct that might constitute the subject of different offense guidelines, the Statutory Index may specify more than one offense guideline for that particular statute, and the court will determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted . . . .

U.S.S.G. § 1B1.2, cmt. (n.1).

12

The commentary to the guideline for extortion by force or threat of injury or serious damage notes that the guideline applies if there was any threat, express or implied that reasonably could be interpreted as one to drive an enterprise out of business. U.S.S.G. § 2B3.2, cmt. (n.2). The commentary to the guideline for blackmail and similar forms of extortion explains that blackmail is "a threat to disclose a violation of United States law unless money or some other item of value is given." U.S.S.G. § 2B3.3, cmt. (n.1). The Seventh Circuit addressed this provision in *United States v. Lallemand*, 989 F.2d 936, 939 (7th Cir. 1993), noting that "the guideline applicable to blackmail is narrow." Furthermore, the court stated that the guideline "is limited to blackmail itself, whether charged under the blackmail statute or under an extortion statute, and to other forms of extortion that do not involve a threat of force or the abuse of an official position . . . . " *Id.* Thus, the blackmail guideline does not cover all forms of extortion. *See id.*

With respect to extortion of McDonald, we conclude that the district court properly applied the guideline governing extortion by force or threat of injury or serious damage because the guideline commentary specifically identifies the conduct of conviction here, that Mathis impliedly threatened McDonald such that he reasonably interpreted the threat to drive the lounge out of business. *See* U.S.S.G. § 2B3.2, cmt. (n.2). McDonald bought and sold beer for the lounge and

13

he was an officer of the Club. Importantly, there is no restriction that § 2B3.2 apply only in circumstances involving actual physical force. Furthermore, there is no requirement that offensive conduct completely drive an enterprise out of business, but only that there was some injury, which in this case was to deprive the Club of its license. Moreover, the offense guideline governing blackmail did not apply in this case because the ordinance restricting the location of establishments serving liquor was public and on the record, and therefore, there was no secret to be revealed. Thus, here, we conclude that the district court applied the appropriate offense guideline to Mathis's extortion convictions.

V.

Because the operative facts were not in dispute, the district court was confronted with the necessity of deciding, as a matter of law, whether the undisputed facts triggered the enhancement for obstruction of justice, a determination we review *de novo*. *United States v. Banks,* 347 F.3d 1266, 1269 (11th Cir. 2003). The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement. *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

The guideline for the obstruction of justice enhancement provides that

[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of

14

the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The commentary to this guideline provides that the two-level enhancement should apply where the defendant provides a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the subject offense. U.S.S.G. § 3C1.1, cmt. (n.4(g)). Most importantly, however, the commentary provides that if the defendant is convicted both of an obstruction offense and an underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense under U.S.S.G. § 3D1.2(c). U.S.S.G. § 3C1.1, cmt. (n.8). Under this scenario, as is the case here, the offense level for that group of closely related counts will be the offense level for the underlying offense increased by the two-level adjustment. *Id.* This adjustment applies to any other obstructive conduct with respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct. U.S.S.G. § 3C1.1, cmt. (n.4).

Although we have not done so before, here, we agree with other federal appellate courts that have applied the obstruction of justice enhancement where the defendant was convicted on multiple charges, including on a separate charge of

15

obstructive conduct. *See e.g.*, *United States v. Brooks*, 111 F.3d 365, 373 (4th Cir. 1997); *United States v. Crisci*, 273 F.3d 235, 240 (2d Cir. 2001); *United States v. Edwards*, 303 F.3d 606, 646 (5th Cir. 2002); *United States v. Frank*, 354 F.3d 910, 924 (8th Cir. 2004).

At the outset, we hold that the conclusion of an investigation, *per se*, is not enough to avoid an enhancement for obstruction of justice because the enhancement is applicable during the prosecution and sentencing phases as well. *See* U.S.S.G. § 3C1.1.

Next, we conclude that the district court properly applied the two-level enhancement where in addition to the underlying offense of extortion, Mathis was convicted of a separate charge of making false statements. *See* U.S.S.G. § 3C1.1, cmt. (n.4, 5, 8). In this case, Mathis's separate count of conviction for making misleading statements to investigating authorities investigating the instant offense compelled the district court to apply section 3C1.1. Moreover, as discussed in section III, *supra*, the misleading statements conviction is supported by the evidence. Accordingly, we affirm the district court's application of the obstruction of justice enhancement.

VI.

Because Mathis raises an objection to the application of the abuse of position of trust enhancement for the first time on appeal, we review this issue for plain error. *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785, 631,152 L. Ed. 2d 860 (2002). To establish plain error, the defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* We have held, however, that "an error cannot meet the 'plain' requirement of the plain error rule unless it is 'clear under current law.' . . . [W]here neither the Supreme Court nor [the Eleventh Circuit] has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) (citations omitted).

Section 3B1.3 provides a two-level enhancement for abuse of trust "[i]f the defendant abused a position of public . . . trust, . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "For the adjustment to apply, the government must establish both elements: (1) that the defendant held a place of public . . . trust; and (2) that the defendant abused that

17

position in a way that significantly facilitated the commission or concealment of the offense." *United States v. Ward*, 222 F.3d 909, 911 (11th Cir. 2000). The commentary to section 3B1.3 provides that:

> '[p]ublic . . . trust' refers to a position of public . . . trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of public . . . trust must have contributed in some significant way to facilitating the commission . . . of the offense . . . .

U.S.S.G. § 3B1.3, cmt. (n.1).

In *United States v. Shenberg*, 89 F.3d 1461, 1477 (11th Cir. 1996), an elected official of a county's judicial system was convicted of, among other things, extortion, and we affirmed the application of the abuse of public trust enhancement where the district court considered the defendant's conduct with respect to his position as an elected official. *See e.g.*, *United States v. Brave Thunder*, 445 F.3d 1062, 1065 (8th Cir. 2006) (persuasive authority) (holding that the district court properly imposed two-level enhancement for abuse of public trust where elected members of governmental commissions were convicted of, among other things, making false statements to authorities); *United States v. Blandford*, 33 F.3d 685, 711 (6th Cir. 1994) (persuasive authority) (affirming a two-level enhancement for

18

abuse of public trust by an elected member of state general assembly convicted of extortion).

Here, we conclude from the record that the district court did not commit error by enhancing Mathis's sentence by two levels for abuse of position of public trust because he was an elected official of a city commission. *See Shenberg*, 89 F.3d at 1477. Because Mathis was elected to his position of city commissioner, he was someone in the public trust. In addition, Mathis exercised managerial duties for the city, for example, he took part in arranging for garbage disposal and granting business licenses. As discussed at length above, Mathis's abuse of his position of public trust was the basis for the commission of the instant offenses. In sum, because the district court properly applied the abuse of trust enhancement pursuant to U.S.S.G. § 3B1.3, there was no error, and because there are no binding cases in support of Mathis's position, even if there was error at sentencing, it was not "plain." *See Aguillard*, 217 F.3d at 1321.

## VII.

The sentence finally imposed on a defendant under an advisory guidelines system is reviewed for reasonableness. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Following the *Booker* decision, we stated that the district court must first correctly calculate the defendant's guideline range, then, using the

19

18 U.S.C. § 3553(a) sentencing factors, the court can impose a more severe or more lenient sentence as long as it is reasonable. *Crawford*, 407 F.3d at 1179. Our review for reasonableness is deferential. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." *Id.*

The specific factors to be taken into consideration under a reasonableness review are those found in 18 U.S.C. § 3553(a). *See Booker*, 543 U.S. at 261, 125 S. Ct. at 765. The factors to be considered are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed --(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed [treatment]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range. . .; (5) any pertinent policy statement. . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3553(c)(2), a district court must state sufficiently specific reasons for its departure from the applicable guidelines range so that an appellate court can engage in meaningful review. *United States v. Suarez*, 939 F.2d 929, 933

(11th Cir. 1991). "When evaluating a district court's reasons for imposing a particular sentence, [we] may consider the entire sentencing hearing and need not rely upon the district court's summary statement made at the closing of the sentencing hearing." *Id.* at 934. Nothing in *Booker* altered the § 3553(c)(2) requirement that a district court state reasons for its departure from the applicable guidelines range. *United States v. Montgomery*, 165 Fed. Appx. 840, 842 (11th Cir. 2006) (unpublished).

We have held, however, that "nothing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005) (sentence imposed within guideline range). Accordingly, we do not review for the specific enumeration of the § 3553(a) factors; rather, we use those factors to determine if a sentence is reasonable. *Id.* Furthermore, we have held that a district court's statement that it had considered the § 3553(a) factors alone is sufficient in post-*Booker* sentences to indicate that it considered the factors, and concluded that the defendant's sentence was reasonable because the district court accurately calculated the guideline range and the defendant's sentence at the low end of the range reflected the court's consideration of his evidence in mitigation. *Scott*, 426 F.3d at 1330.

21

In *United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005), we rejected a government challenge and affirmed a sentence one-tenth the length of the twenty-year statutory maximum sentence for the committed offense because, in light of the factors outlined in § 3553(a), the sentence imposed was reasonable. Notably, Winingear defrauded 21 people of a total of $19,600, had multiple previous convictions, committed the instant crime while still under sentence for a previous crime, violated his bond, and threatened to murder arresting officers as he fled from them. *Id.* at 1246.

In *United States v. Williams*, 435 F.3d 1350, 1354 (11th Cir. 2006), we rejected a government challenge and upheld the defendant's 90 month sentence, which was less than half the lowest sentence within the applicable guideline range of 188 to 235 months imprisonment, as reasonable. Specifically, we noted that the district court weighed the factors in § 3553 and took into account the defendant's individual history and the nature of the charge against him. *Id.* at 1355.

In *United States v. McVay*, 447 F.3d 1348 (11th Cir. 2006), however, we said that where a district court imposes a sentence "falling far outside of the Guidelines range, based on the § 3553(a) factors, an extraordinary reduction must be supported by extraordinary circumstances." *Id.* at 1357 (internal quotations omitted). In *McVa*y, we remanded for re-sentencing the defendant's sentence

22

which departed by 21-levels from a guidelines sentencing range of 87 to 108 months' imprisonment to a sentencing range of 0 to 6 months' imprisonment. *Id.* at 1349.

In this case, we conclude that Mathis's 36-month sentence was reasonable. First, the district court followed the proper procedure in determining the sentence because it: (1) correctly calculated the advisory guidelines range; and (2) indicated that it had considered the factors contained in 18 U.S.C. § 3553(a). *See Talley*, 431 F.3d at 786. Second, the district court complied with the requirement of 18 U.S.C. § 3553(c)(2), even though it was not required to discuss each of the § 3553(a) factors. *See Scott*, 426 F.3d at 1329. The district court found that the guideline range was "excessively punitive," based on Mathis's commitment to public service, the monetary amount involved, and that this was his only criminal conviction. Finally, the district court noted that it had imposed the sentence because the extortion convictions for counts two and three were so closely related as they involved the same business. Thus, we conclude that the district court correctly calculated the guidelines range and considered the factors of § 3553(a). For the above-stated reasons, we affirm Mathis's convictions and sentences.

**AFFIRMED.**