**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                          No. 01-4725

CHARLESZETTE ARDEL BRANDON,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-01-107-A)

Argued: May 9, 2002

Decided: August 2, 2002

Before TRAXLER, Circuit Judge, C. Arlen BEAM,
Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation, and
Robert E. PAYNE, United States District Judge for the
Eastern District of Virginia, sitting by designation.*

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Beam joined.

*This appeal was initially assigned to a panel consisting of Judge
Traxler, Judge Beam, and Judge Robert E. Payne, United States District
Judge for the Eastern District of Virginia. Judge Payne disqualified him-
self from sitting on this case. The appeal was heard and decided by a
quorum of the assigned panel. *See* 28 U.S.C.A. § 46 (West 1993 & Supp.
2002).

**COUNSEL**

**ARGUED:** Matthew Alan Wartel, BYNUM & JENKINS, P.L.L.C., Alexandria, Virginia, for Appellant. Morris Rudolph Parker, Jr., Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Charleszette Ardel Brandon pled guilty to bank fraud. *See* 18 U.S.C.A. § 1344 (West 2000). She appeals, arguing that the district court erroneously denied her motion to dismiss the indictment. We affirm.

I.

Brandon was charged with, and ultimately pled guilty to, federal bank fraud for engaging in a scheme whereby she stole blank checks from six individuals who each maintained a checking account at one of the federally-insured banks listed in the indictment. Brandon then procured picture identification cards bearing the name of each individual account holder, forged the signatures of the account holders on the stolen checks, and negotiated the checks to purchase various items from merchants in Virginia and Maryland. Each of the six counts of bank fraud charged in the indictment is based on a single stolen check that Brandon negotiated in exchange for merchandise.

Prior to trial, Brandon filed a motion to dismiss the indictment, arguing that the facts alleged in the indictment, even if true, did not constitute bank fraud under § 1344. Relying on our decision in *United States v. Orr*, 932 F.2d 330 (4th Cir. 1991), Brandon contended that the indictment failed to allege sufficient facts to support a charge of bank fraud under § 1344 because Brandon's scheme involved presenting the stolen checks to the retail merchants rather than directly to the banks. Thus, Brandon argued that "the fraud victims here are the retail

merchants" instead of the banks. J.A. 16. The district court denied the motion. The court disagreed that *Orr* was controlling and concluded that the allegations contained in the indictment sufficiently set forth the essential elements of an offense under both § 1344(1) and § 1344(2). Brandon then entered a conditional guilty plea to count 2 of the indictment which was based on a check that was drawn on an account at HEW Federal Credit Union.[1] Brandon reserved her right to appeal the district court's denial of her motion to dismiss the indictment. *See* Fed. R. Crim. P. 11(a)(2). Brandon brings that appeal now.

## II.

We review the district court's ruling on a motion to dismiss an indictment *de novo*. *See United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Usually "an indictment is sufficient if it alleges an offense in the words of the statute," *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999), as long as the words used in the indictment "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence," *Hamling*, 418 U.S. at 117 (internal quotation marks omitted). However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 117-18 (internal quotation marks omitted). Thus, the indictment must also contain a "statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added); *see United States v. Smith*, 44 F.3d 1259, 1263 (4th Cir. 1995).

---

[1] Pursuant to Brandon's plea agreement, the United States filed, and the district court granted, a motion to dismiss the remaining counts in the indictment.

III.

Brandon was indicted on six counts of bank fraud under 18 U.S.C.A. § 1344. That section provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The indictment charges that Brandon "knowingly and intentionally execute[d] a scheme and artifice" to (1) "defraud NationsBank, First Union National Bank, Industrial Bank, Bank of America, Crestar Bank, and the HEW Federal Credit Union" and (2) "obtain moneys and funds owned by and under the custody and control of" the specified banks "by means of false and fraudulent pretenses, representations, or promises." J.A. 9. Thus, the indictment obviously tracks the statutory text of § 1344 which, as we observed, is generally enough for the indictment to survive a motion to dismiss, *see Wicks*, 187 F.3d at 427, if it contains a sufficient "statement of the facts and circumstances [to] inform the accused of the specific offence . . . with which he is charged," *Hamling*, 418 U.S. at 117-18 (internal quotation marks omitted).

The two subsections contained in § 1344 proscribe slightly different conduct, but a person may commit bank fraud by violating either subsection. *See United States v. Colton*, 231 F.3d 890, 897 (4th Cir. 2000); *see also United States v. Celesia*, 945 F.2d 756, 758 (4th Cir. 1991) ("[O]ne may commit a bank fraud under Section 1344(1) by defrauding a financial institution, without making the false or fraudu-

lent promises required by Section 1344(2).")." Section 1344(1) prohibits the use of a scheme or artifice to defraud a bank. In order to prove a violation of section 1344(1), the government must demonstrate that the accused executed a scheme to defraud a federally insured or chartered bank and that the accused did so knowingly.[2] *See United States v. Akers*, 215 F.3d 1089, 1100 (10th Cir.), *cert. denied*, 531 U.S. 1023 (2000) ("[T]he elements of bank fraud are: (1) that the defendant knowingly executed or attempted to execute a scheme (i) to defraud . . .; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was then insured by the Federal Deposit Insurance Corporation." (internal quotation marks omitted)); *United States v. Yoon*, 128 F.3d 515, 522 (7th Cir. 1997) ("[T]he indictment . . . must allege (1) that [the defendant] (2) *knowingly* (3) engaged in a *scheme to defraud* the banks.").

The "scheme to defraud" clause of Section 1344(1) is to be interpreted broadly, *Colton*, 231 F.3d at 897-98, and requires that the defendant act with the "specific intent to deceive or cheat, . . . for the purpose of getting financial gain for one's self or causing financial loss to another," *United States v. Moede*, 48 F.3d 238, 241 (7th Cir. 1995). Under the plain terms of § 1344(1), the government must prove that the defendant intended to deceive a bank through the scheme. *See, e.g.*, *United States v. Kenrick*, 221 F.3d 19, 26-27 (1st Cir.) (en banc), *cert. denied*, 531 U.S. 961 (2000); *United States v. Stavroulakis*, 952 F.2d 686, 694 (2nd Cir. 1992). "Because § 1344 focuses on the bank, rather than on the potential victims, a conviction under § 1344 is not supportable by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such an institution was an intended victim." *United States v. Laljie*, 184 F.3d 180, 189-90 (2nd Cir. 1999). However, "[t]he bank need not be the immediate victim of the fraudulent scheme," *United States v. Crisci*, 273 F.3d 235, 240 (2nd Cir. 2001) (per curiam) (internal quotation marks omitted), and the victim bank need not have suffered an actual loss; it is sufficient for the government to show "that a financial institution [was] exposed to an actual or potential risk of loss." *Colton*, 231 F.3d at 908 (internal quotation marks omitted); *see also Akers*,

---

[2]The indictment here also alleges that each of the banks listed was "insured by the Federal Deposit Insurance Corporation." J.A. 9.

215 F.3d at 1101 (explaining that in order to sustain "a § 1344 conviction the government does not have to prove the bank suffered any monetary loss, only that the bank was put at potential risk by the scheme to defraud" (internal quotation marks omitted)); *United States v. Young*, 952 F.2d 1252, 1257 (10th Cir. 1991) (noting that a bank is exposed to a risk of loss when the defendant's conduct exposes the bank to civil litigation).

The allegations of the indictment clearly inform Brandon of conduct which, if proven by the government, would constitute a "scheme to defraud" the banks. The indictment alleges that Brandon stole checks from legitimate accounts, forged the account holder's signature on the checks, and then presented the forged instruments to merchants who exchanged goods for the funds held by the drawee banks. Clearly, the indictment charges Brandon with conduct that satisfies the requirement that she engage in a scheme to defraud a bank since an inevitable part of this process is the eventual presentation of the stolen and forged checks to the drawee banks, which exposes the banks to a potential risk of loss. *See Laljie*, 184 F.3d at 189 ("Presentation to a financial institution of a fraudulent document that exposes the institution itself to a potential loss if the document be honored and funds be released, such as a forged or altered document, is within the scope of § 1344."); *Stavroulakis*, 952 F.2d at 695 ("In most forgery situations, the bank will be legally liable, and, . . . even in . . . those situations where the bank is not legally liable for paying over a forged signature, the bank will often swallow the loss for the customer."); *United States v. Lemons*, 941 F.2d 309, 315-16 (5th Cir. 1991) (per curiam) (bank was subjected to a risk of loss from a forged endorsement even though the bank suffered no harm).

Moreover, a "defendant's knowing negotiation of a bank check bearing a forged endorsement" satisfies the requirement "that a bank [be] an actual or intended victim of defendant's scheme," even if the forged instrument is presented to a third party and not directly to a bank. *Crisci*, 273 F.3d at 240 (internal quotation marks omitted); *see United States v. Jacobs*, 117 F.3d 82, 92-93 (2nd Cir. 1997) (explaining that "for the bank fraud statute to apply, the fraud must be against the bank" but noting that "a scheme can be primarily directed at a third party and still give rise to bank fraud"). As the Second Circuit recently explained,

[A] rational jury could find that [the defendant] intended to harm a bank when he cashed seventeen fraudulent checks with forged endorsements, even though defendant physically presented the forged checks to [a merchant] and not a bank. The jury could infer that inherent in [the defendant's] transactions with [the merchant] was the risk that the forged checks would be presented to a bank for payment. . . . [The defendant] is not relieved of criminal liability for bank fraud because his primary victim was [not a bank].

*Crisci*, 273 F.3d at 240. For the same reasons, a defendant dealing in stolen blank checks falls within the ambit of § 1344(1):

[B]y charging a scheme to traffic in stolen, blank checks, the indictment accused defendant of engaging in a course of intentionally deceptive conduct directed at the drawee bank. Blank checks are of no value unless and until they are passed through the drawee bank . . . . Inherent in a sale of stolen checks is that they *will eventually be presented to the drawee bank for payment; and payment over a forged signature exposes the bank to real loss* [because in] most forgery situations, the bank will be legally liable . . . .

*Stavroulakis*, 952 F.2d at 695 (emphasis added). We conclude that the fact that the indictment does not charge that Brandon presented the forged checks directly to the banks does not make the indictment infirm. Brandon's scheme exposed the drawee banks to potential loss in that she stole checks from existing bank accounts, forged the account holder's signature, and then injected the forged instruments into the stream of commerce. An inherent part of this scheme was that the forged checks would eventually be presented to the drawee banks, exposing the banks to a risk of loss. Accordingly, we hold that the indictment sufficiently charges the elements of bank fraud under § 1344(1) and the essential circumstances of Brandon's underlying conduct.

Brandon argues, however, that this case is controlled by our decision in *United States v. Orr*, 932 F.2d 330 (4th Cir. 1991), which holds that simply passing a "bad check" — that is, drawing a check on an account that does not contain sufficient funds to cover the check

— does not constitute federal bank fraud under § 1344. *See id.* at 332. In *Orr*, the bank refused to honor a number of checks defendants negotiated to various retailers and ultimately returned the checks for lack of sufficient funds. We concluded that there was insufficient evidence to support the jury's conclusion that the defendants had executed a scheme to defraud the banks, as opposed to the merchants, because "[t]he account was, albeit for a short time, an active account, traded upon in proper fashion until its funds ran out." *Id.*

This case presents an entirely different scenario than did *Orr*. We view *Orr* as establishing merely that a routine bad check case does not come within the scope of § 1344 where the defendant passes to a merchant a check from an account for which the defendant is an authorized signatory and the drawee bank refuses to honor the check for lack of sufficient funds. By contrast, Brandon is obviously neither an account holder nor an authorized signatory on the accounts she used. She stole the checks and forged the signatures, setting in motion the eventual presentation of the forged instruments to the drawee banks and exposing the banks to potential liability to the legitimate account holders. There is a clear distinction between a check that bears an authorized signature and a check that bears a forged signature or has been altered in some way. When the drawer has simply overdrawn the account, the government must present "other facts evincing an intent to victimize the financial institution" to sustain a bank fraud charge under § 1344. *Laljie*, 184 F.3d at 190 (internal quotation marks omitted). However, the presentation of a forged or altered instrument is evidence, in and of itself, of an intent to defraud a bank. *See id.* at 190-91 (affirming defendant's bank fraud conviction based on checks that she had physically altered as to the amount but reversing conviction based on checks that defendant deceived maker into paying to defendant's husband where there was no evidence that the checks had been altered or that the signature was not genuine). Brandon's insistence that the indictment merely states a run-of-the-mill scheme to pass bad checks ignores an obvious and critical distinction between her conduct and that present in *Orr* — Brandon forged the signatures on checks that she stole from account holders. By contrast, the checks at issue in *Orr* bore an authorized signature. Brandon's reliance on *Orr* is misplaced.

## IV.

The indictment also charges that Brandon's conduct violated § 1344(2) in that it constituted "a scheme and artifice . . . to obtain moneys and funds owned by and under the custody and control of [the specified banks] by means of false and fraudulent pretenses, representations, or promises." J.A. 9. Brandon does not argue that her conduct does not qualify as "false or fraudulent pretenses, representations, or promises" under § 1344(2). *See United States v. Miller*, 70 F.3d 1353, 1355 (D.C. Cir. 1995) (noting that a forged signature qualifies as a fraudulent misrepresentation under § 1344). Rather, Brandon contends that § 1344(2) requires that she make "false representations . . . aimed at obtaining the property of the federally chartered institution," but that her scheme, as charged by the indictment, "was solely directed towards getting the property of the retailers." Brief of Appellant at 17. Given our conclusion that the indictment sufficiently charges Brandon with conduct that violates § 1344(1), we need not address this argument since the indictment charges in the conjunctive violations of § 1344(1) and § 1344(2). "Where a statute specifies several alternative ways in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction thereon will stand if proof of one or more of the means of commission is sufficient." *United States v. Harvard*, 103 F.3d 412, 420 (5th Cir. 1997) (internal quotation marks omitted) (analyzing an indictment charging bank fraud under both subsections of § 1344); *see Turner v. United States*, 396 U.S. 398, 420 (1970) (reaffirming the principal that where an indictment charges several acts in the conjunctive, a guilty verdict stands if the evidence is sufficient with respect to any one of the acts charged).

## V.

For the foregoing reasons, we conclude that the indictment against Brandon was legally sufficient and we affirm the decision below.

*AFFIRMED*