**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-4855**

_____

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

        v.

SHERRY TAYLOR,

              Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Gerald Bruce Lee, District
Judge.  (1:11-cv-00049-GBL-1)

_____

Argued:  September 20, 2012          Decided:  November 26, 2012

_____

Before WILKINSON, DIAZ, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Geremy C. Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Alexandria, Virginia, for Appellant.   Kosta S. Stojilkovic,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellee.    **ON BRIEF:** Michael S. Nachmanoff, Federal Public
Defender, Caroline S. Platt, Appellate Attorney, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.
Neil H. MacBride, United States Attorney, Alexandria, Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sherry Taylor was convicted of four counts of bank fraud, in violation of 18 U.S.C. § 1344, and one count of access device fraud, in violation of 18 U.S.C. § 1029(a)(2). On appeal, Taylor challenges the sufficiency of the evidence presented in support of her bank fraud convictions, contending that the government failed to prove that she had the requisite intent to defraud a financial institution. We conclude, however, that the government's proof as to Taylor's intent to commit bank fraud was more than sufficient to meet its burden. Accordingly, we affirm.

I.

Between March and October 2010, Taylor made a series of fraudulent purchases of electronics using American Express cards with false names at Costco and Safeway stores in Virginia.[*] Taylor used the credit cards to make purchases in amounts ranging from $3,035.70 to $19,372.31 and totaling $38,378.55. The government presented evidence showing that American Express bore the loss of both Safeway transactions. A Costco loss prevention regional manager testified regarding how the risk of

---

[*] Because the government prevailed at trial, we view the facts in the light most favorable to it. United States v. Herder, 594 F.3d 352, 358 (4th Cir. 2010).

2

fraudulent purchases was allocated between Costco and American Express. Namely, if the cashier swiped the card through an electronic reader, American Express would provide an approval code and consequently bore the risk of any loss due to fraud. If the cashier keyed in the card number, however, American Express sent a temporary approval code and the risk of loss was borne by Costco. Under this arrangement, both Costco and American Express were responsible for losses at various times as a result of Taylor's fraudulent purchases. Taylor also stipulated that at all times relevant to this case, American Express was a "financial institution" within the meaning of the bank fraud statute. See 18 U.S.C. § 1344.

At the close of the government's evidence, Taylor moved for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, contending that there was insufficient evidence of her intent to defraud a financial institution. The district court denied Taylor's motion, ruling that "the defendant knew her fraudulent actions would expose at least some bank, American Express here, to a risk of loss." J.A. 305. After reciting the elements required for a conviction under the bank fraud statute, the court explained that "[§] 1344 does not require that the scheme be directed solely at a particular institution. It is sufficient that the defendant knowingly exposed a bank to a risk of loss." Id. 304.

3

Taylor testified in her own defense. On cross examination, Taylor, who had worked as a store clerk, acknowledged that she understood "how the process works with [a] credit card." Id. 309-10. Specifically, she admitted that she understood "[t]he card is swiped . . . [an] electronic message of some sort is sent to the bank, and then the bank pays the retailer." Id. 310.

At the close of all the evidence, Taylor renewed her Rule 29 motion, which the court again denied. The court found Taylor guilty on all counts, concluding that by using fraudulently obtained credit cards to make large purchases of electronics, Taylor engaged in "a scheme to defraud that was knowingly undertaken." Id. 361. The court later sentenced Taylor to thirty-six months in prison as to each of the counts, to run concurrently, and ordered restitution in the amount of $429,033.08. This appeal followed.

II.

We review a district court's denial of a motion for judgment of acquittal de novo. United States v. Abdelshafi, 592 F.3d 602, 606 (4th Cir. 2010). "We review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the

4

conviction." United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) (internal quotation marks omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

## III.

Taylor first argues that the government failed to present sufficient evidence to support the conclusion that victimizing a bank was a part of her scheme--in other words, Taylor argues that her scheme to defraud was complete once she obtained the goods. In a related argument, Taylor contends that her intended victims were the merchants, rather than the bank. Finally, Taylor argues that allowing the government to obtain a conviction under the bank fraud statute by simply showing a risk of loss to the bank renders the access device statute superfluous. We address these arguments in turn.

## A.

The federal bank fraud statute at issue in this appeal provides as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
> (1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Although the two subsections of § 1344 criminalize slightly different conduct, both require that the defendant act knowingly. United States v. Brandon, 298 F.3d 307, 311 (4th Cir. 2002). We have explained that "[b]ecause § 1344 focuses on the bank . . . a conviction under § 1344 is not supportable by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such institution was an intended victim." Id. at 311 (quoting United States v. Laljie, 184 F.3d 180, 189-90 (2d Cir. 1999)). We clarified, however, that "the bank need not be the immediate victim of the fraudulent scheme" and that the "bank need not have suffered an actual loss." Id. at 312 (citations and internal quotation marks omitted). Rather, the government satisfies the intent element with proof that the defendant knowingly exposed a financial institution to an actual or potential risk of loss through the scheme to defraud. Id.

Taylor argues that she lacked this intent because her scheme to defraud was complete once she obtained the goods from the merchants. In support of this contention, Taylor relies on

6

United States v. Maze, 414 U.S. 395 (1974). In Maze, the defendant stole his roommate's bank credit card and used it to obtain food and lodging at motels in three states. Id. at 396-97. The motels, in turn, mailed the invoices to the bank, which then mailed them to the roommate for payment. Id. at 397. The government charged Maze with mail fraud, contending that Maze knew that each merchant would eventually mail the credit card invoices to the banks. Id. at 396-97.

The Supreme Court, however, concluded that the mailing of invoices was not "sufficiently closely related to [the defendant's] scheme to bring his conduct within the statute." Id. at 399. The Court explained that Maze's "scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss." Id. at 402.

Although Maze was charged with mail fraud, Taylor asks this court to read into the bank fraud statute a similar limiting principle. Taylor's reliance on Maze, however, is misplaced because the bank fraud statute does not require a proof of mailing, or other means of transmission, in furtherance of the scheme. As we explained in Brandon, it is sufficient for a conviction under the bank fraud statute that the defendant knowingly exposed the financial institution to a risk of loss,

7

see Brandon, 298 F.3d at 312, which is precisely what the government proved here.

Taylor next argues that her intent in executing her fraudulent scheme was to defraud the merchants, not the bank. Citing the Third Circuit's decision in United States v. Thomas, 315 F.3d 190 (3d Cir. 2002), Taylor contends that the government failed to produce sufficient evidence to prove that the bank was anything more than an incidental victim. Appellant's Br. 24.

In Thomas, the defendant was a home health care aide employed by an 88-year-old stroke victim. 315 F.3d at 194. The defendant induced her employer to sign checks made out to cash, providing a pretext that she was transferring money or purchasing groceries as part of her position. Id. The defendant would then cash the checks at the bank, at times bringing her employer to authorize the transactions in front of the teller. Id. The Third Circuit reversed the defendant's bank fraud conviction, reasoning that the deception of the bank was an incidental aspect of a scheme primarily designed to defraud the defendant's employer. Id. at 200. The court concluded that cases in which the cashed checks are facially valid do not implicate the federal interest that the statute was created to protect--that is, those cases do not expose the bank

8

to liability or undermine the integrity of the bank in a way that constitutes bank fraud.  Id.

Thomas, however, is inapposite given the bank's role in Taylor's scheme, which we find more akin to that assumed by the bank in Brandon.  See 298 F.3d 307.  In Brandon, the defendant was charged with bank fraud for engaging in a scheme in which she stole checks from others, forged their signatures, and used the checks to make purchases from various merchants. Id. at 309-10.  On appeal, the defendant challenged the sufficiency of the indictment, contending that her scheme involved presenting the forged checks to retail merchants and that the merchants--rather than the bank--were the victims of her fraud.  Id. at 310.  We rejected that argument, concluding that "[a] defendant's knowing negotiation of a bank check bearing a forged endorsement satisfies the requirement that a bank be an actual or intended victim of the defendant's scheme, even if the forged instrument is presented to a third party and not directly to a bank."  Id. at 312 (quoting United States v. Crisci, 273 F.3d 235, 240 (2d Cir. 2001)) (internal quotation marks omitted).

We see no material distinction between the defendant's use of stolen checks in Brandon and Taylor's similar scheme involving stolen bank credit cards.  Accord United States v. Ayewoh, 627 F.3d 914 (1st Cir. 2010) (rejecting a defendant's

9

argument that he intended to defraud credit card holders, whose account numbers he fraudulently used, rather than the bank). And unlike in Thomas, the payment presented--here, a credit card--was falsified, and the bank was exposed to liability. Accordingly, the district court correctly determined that the government's evidence alone was sufficient to meet its burden as to Taylor's intent. Taylor also admitted, however, that she had previously handled credit cards as a store clerk and that she understood that when a credit card is swiped, the issuing entity is contacted and pays the retailer. Thus, the record contains ample evidence that Taylor knowingly exposed American Express to a risk of loss.

C.

Finally, we turn to Taylor's contention that affirming her bank fraud convictions based on her fraudulent use of credit cards would render the access device fraud statute superfluous.

This argument fails on several fronts. To begin with, the access device fraud statute criminalizes the fraudulent use of a variety of financial instruments other than credit cards, including electronic serial numbers and mobile identification numbers. See 18 U.S.C. § 1029(e)(1) (defining "access device"). Second, the statute criminalizes conduct beyond the mere unauthorized use of an access device, encompassing, inter alia,

10

the trafficking and possession of access devices as well.  <u>See</u> <u>id.</u> § 1029(a)(1), (3)-(4).  Finally, not all credit card companies are "financial institutions" as defined in the bank fraud statute, <u>see</u> <u>id.</u> § 20, and thus the government may properly look to the access device fraud statute in such instances.  In sum, we have no concern that affirming Taylor's conviction for bank fraud on the facts before us risks obliterating the utility of the access device fraud statute.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

11