**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4787**

———————

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

      v.

ELRODA SHAVAYA THOMPSON,

            Defendant – Appellant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:12-cr-00434-CCE-1)

———————

Submitted:  June 12, 2014            Decided:  October 1, 2014

———————

Before KING, DUNCAN, and KEENAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Lisa S. Costner, LISA S. COSTNER, P.A., Winston-Salem, North Carolina, for Appellant.  Ripley Rand, United States Attorney, Greensboro, North Carolina, Andrew C. Cochran, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Elroda S. Thompson was convicted under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for possession of a firearm by a convicted felon. Thompson appeals the denial of his motion to dismiss under Brady v. Maryland, 373 U.S. 83 (1963), contending that the prosecution violated his due process rights by failing to preserve potentially exculpatory evidence. Thompson also appeals his enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). He contends that his sentence should be vacated because the record does not establish that he committed three separate ACCA predicate offenses. For the reasons that follow, we affirm.

I.

A.

On June 17, 2012, the Winston-Salem Police Department (WSPD) responded to a call reporting an assault with a deadly weapon. WSPD interviewed Douglas Edwards who stated that he had been threatened by a man with a gun. Edwards stated the suspect, who was driving a silver Malibu, stopped in front of Edward's home, pointed a gun out the driver's window, and threatened Edwards. Edwards provided WSPD with the license plate number of the suspect's vehicle.

2

Corporal R.D. Fenimore of the WSPD located a silver Malibu matching the description released on the police radio, matched the license plate to the number provided by Edwards, and pulled over the vehicle. Fenimore's dash camera, known as a Mobile Digital Video Recorder (MDVR), began recording automatically when he turned on his blue lights.

Fenimore instructed the driver, Thompson, to exit the vehicle. Thompson exited, left the driver's door open, and approached Fenimore with balled fists. Thompson did not comply with instructions to stop approaching until Fenimore had his Taser drawn. Fenimore handcuffed Thompson, then approached Thompson's vehicle to ensure no one else was inside. Fenimore observed through the open door a handgun sticking out from under the driver seat.

Fenimore secured the handgun and arrested Thompson for assault by pointing a gun, a misdemeanor under N.C.G.S. § 14-34. He then turned off his MDVR and drove Thompson to the county jail. At the jail, Fenimore transferred custody of Thompson to Corporal Kerns, who processed Thompson. During processing, Kerns discovered that Thompson was a felon and charged Thompson with possession of a firearm by a felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

WSPD procedure requires MDVR footage to be labeled by category. Footage labeled "Felony" or "DUI" is automatically

3

copied to a DVD. All other footage is retained for only 60 days, or 120 days if flagged. Fenimore did not label Thompson's footage as "Felony" because he believed the arrest was for a misdemeanor. Kerns did not update the footage label during Thompson's processing, and it was therefore preserved for only 60 days.

### B.

Thompson was indicted under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for one count of possession of a firearm by a convicted felon. Thompson filed a motion to dismiss under Brady, which the district court denied. Thompson pleaded guilty, reserving his right to appeal the denial of his motion to dismiss. The district court enhanced Thompson's sentence under the ACCA, citing his three previous convictions for second degree burglary in North Carolina state court. Thompson was sentenced to 180 months' imprisonment with a subsequent term of five years' supervised release. Thompson timely appealed.

### II.

In reviewing the district court's denial of a motion to dismiss, we review its legal conclusions de novo, see United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002), and its factual findings for clear error. See United States v. Woolfolk, 399 F.3d 590, 594 (4th Cir. 2005). In reviewing the

4

district court's statutory interpretation of sentencing under the ACCA, we review the district court's conclusions de novo. United States v. Hobbs, 136 F.3d 384, 387 (4th Cir. 1998).


### III.

Thompson contends that WSPD's failure to provide Fenimore's MDVR footage constituted a Brady violation.  Brady provides the proper analytical framework when exculpatory evidence is withheld from a defendant.  See Brady, 373 U.S. at 87.  However, when evidence has been destroyed, as is the case here, the issue is more properly analyzed under Arizona v. Youngblood, 488 U.S. 51 (1988).[1]  In Youngblood, the Supreme Court held that "unless a

---

[1] Though we analyze Thompson's claim under Youngblood, we note that a Brady challenge on these facts also would have failed.  A successful Brady challenge requires that a defendant demonstrate that the evidence in question was exculpatory. United States v. Wilson, 624 F.3d 640, 661 (4th Cir. 2010). Thompson argues that the MDVR footage would have been exculpatory because the footage would have shown that Officer Fenimore opened Thompson's car door before finding the handgun. Thus, Thompson argues, Fenimore conducted an illegal search, which would have led to the suppression of the handgun that was the basis of Thompson's plea.  However, Thompson's argument misunderstands the standard for searches in this context. Courts have recognized an exception to the Fourth Amendment's typical requirement of a warrant backed by probable cause for searches of automobiles.  The exception "permits a warrantless search of a vehicle when there is probable cause to believe the vehicle contains contraband or other evidence of criminal activity."  United States v. Baker, 719 F.3d 313, 317 (4th Cir. 2013).  Probable cause alone is therefore sufficient for a lawful automobile search.  See id.  Probable cause is "a flexible standard that simply requires 'a reasonable ground for (Continued)

criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58.

The Court further held that where the destruction of evidence "c[ould] at worst be described as negligent," there was no showing of bad faith. Id. Additionally, this court has found that the negligent destruction of evidence, absent more, does not constitute bad faith. See Elmore v. Ozmint, 661 F.3d 783, 831 (4th Cir. 2011) (finding the negligent erasure of the tape of a bank robbery was not bad faith).

---

belief of guilt.'" United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). The Fourth Circuit has recognized that a police report can provide an officer with probable cause for the warrantless search of an automobile. See United States v. Arriaza, 641 F. Supp. 2d 526, 527 (E.D. Va. 2009) aff'd, 401 F. App'x 810 (4th Cir. 2010). In Arriaza, the police based their warrantless search of the defendant's car on a police report indicating that the defendant had a gun in the car he owned. The Arriaza court held that the police report gave the officers probable cause, which validated their search under the automobile exception. In this case, Officer Fenimore received a police report indicating that the driver of a car with Thompson's license plate had threatened a victim with a gun. The police report gave Fenimore reasonable grounds to believe that Thompson was the perpetrator of that crime and that the handgun used in that crime would be in Thompson's vehicle. Thus, like the officers in Arriaza, Fenimore had probable cause to search Thompson's vehicle, and his search was thus proper under the automobile exception. Therefore, the MDVR footage was not exculpatory, and Thompson's Brady claim would have failed.

6

As negligence is insufficient for bad faith, it would follow that mere, non-negligent inadvertence would also not constitute bad faith. Indeed, panels of this circuit have extended the reasoning of Elmore to its logical conclusion, finding that inadvertent destruction of evidence also does not demonstrate bad faith. See United States v. Henderson, 41 F. App'x 651, 652 (4th Cir. 2002)(unpublished opinion) (finding the inadvertent destruction of a video tape did not constitute bad faith).

The record included no indication that WSPD intentionally destroyed Fenimore's footage. Rather, based on the record, WSPD's failure to re-label Fenimore's footage when Thompson's charge was upgraded to a felony--so that the footage would be preserved beyond sixty days--could at worst be described as negligent. Given that the footage was originally labeled correctly and WSPD simply followed its protocol for a label that later became incorrect, the destruction of this evidence is more fairly characterized as inadvertent. In either case, the record does not suggest that the actions of the police that led to the erasure of the tape were undertaken in bad faith. Therefore, Thompson's challenge under Youngblood fails.

IV.

Thompson also challenges his enhanced sentence under the ACCA. He contends that the district court erred by finding that he had three previous convictions for a violent felony "committed on occasions different from one another." 18 U.S.C. § 924(e).

Thompson's Presentence Investigation Report (PSR) provided that his first burglary was conducted with two accomplices at the residence of Frank Tranor on March 16, 2000 from 2:45 a.m. to 3:30 a.m. Thompson's second burglary was conducted on the same night with the same two accomplices, but two miles away at the residence of Eric Peterson from 3:00 a.m. to 4:30 a.m. Thompson's third burglary was conducted at the residence of Robert Hunter on March 19, 2000.

Thompson argues that his first two predicate offenses were in fact one offense under the ACCA. He takes this position because two of the burglaries occurred on the same date, and he argues that he may have pleaded guilty based on accomplice liability. Thompson contends that the record does not show he was physically present at both burglaries, and that his convictions should be considered a single offense under United States v. Tucker, 603 F.3d 260, 265-66 (4th Cir. 2010).

In Tucker, the defendant was convicted with an accomplice of two counts of burglary involving separate storage units at

8

the same facility. Id. We vacated the district court's ACCA sentence because there was insufficient evidence in the record to determine whether the defendant himself entered separate storage units. Id. at 266.

Thompson's reliance on Tucker is unavailing. First, in Tucker, the record did not specify that the defendant entered the storage units separate from his accomplice. Id. at 265. Unlike Tucker, the record here specifically indicates that Thompson himself entered both residences. Also, Thompson and each of his accomplices have separate sentencing documents that each states they individually entered multiple residences.

Second, in Tucker we held that "without evidence that the first crime ended before the second crime began, we cannot determine whether Tucker committed the two burglaries sequentially on separate occasions or simultaneously with the aid of his accomplice." Id. at 266. Unlike Tucker, the record in this case shows a sequence in time between Thompson's two burglaries. Thompson's first burglary occurred from 2:45 a.m. to 3:30 a.m., and the second burglary occurred two miles away from 3:00 a.m. to 4:30 a.m. Thus, Thompson's argument that there is a temporal overlap between his burglaries fails because even with an overlap in time, the record shows the burglaries were sequential.

Third, the evidence establishes that Thompson's first two burglaries meet the criteria for separate ACCA predicate offenses according to this court's test established in United States v. Letterlough, 63 F.3d at 332, 335-37 (4th Cir. 1995).

Under the ACCA, we consider five factors: 1) whether the offenses arose in different geographic locations; 2) whether the nature of each offense was substantively different; 3) whether each offense involved different victims; 4) whether each offense involved different criminal objectives; and 5) after the defendant committed the first-in-time offense, did the defendant have the opportunity to make a conscious and knowing decision to engage in the next-in-time offense. United States v. Carr, 592 F.3d 636, 644 (4th Cir. 2010). We can consider these factors together or independently. Id.

Thompson's first two burglaries occurred at two residences separated by two miles, with separate victims, which establishes the first and third factors. Thompson's first two burglaries were sequential in time, and therefore Thompson had the opportunity to make a conscious decision to engage in a next-in-time offense, which establishes the fifth factor. Therefore, considering these three factors are established, we conclude Thompson's first two burglaries are separate ACCA predicate

10

offenses.  See Hobbs, 136 F.3d at 390 (finding separate ACCA predicate offenses when the same factors were established).[2]

V.

For the foregoing reasons, the district court's denial of Thompson's motion to dismiss and his sentencing under the ACCA is

AFFIRMED.

---

[2] Thompson also submitted a pro se supplemental appellant brief, arguing that his first two predicate offenses were not separate because he received a consolidated sentence for those offenses.  However, this argument fails because separate sentencing is relevant only to career offender enhancement under the United States Sentencing Guidelines, § 4B1.1(a), and not sentencing under the ACCA.